IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) CRIMINAL NO. 1:15-cr-164 |
| v. | ) |
| | ) |
| ALI SHUKRI AMIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## STATEMENT OF FACTS

The parties stipulate and agree that the allegations in the criminal information about the defendant, Ali Shukri Amin, and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From in or about June 2014 through on or about February 26, 2015, within the Eastern District of Virginia and elsewhere, the defendant, ALI SHUKRI AMIN, and others, known and unknown, knowingly did combine, conspire, confederate and agree together and with each other to provide material support and resources, as that term is defined in 18 U.S.C. § 2339A, specifically, personnel, service, and expert advice and assistance, to a foreign terrorist organization, namely the Islamic State in Iraq and the Levant ("ISIL"), knowing that ISIL has engaged and engages in terrorist activity, as that term is defined in 8 U.S.C. § 1182(a)(3)(B), and terrorism, as that term is defined in 22 U.S.C. § 2656f(d)(2), and was a foreign terrorist organization.

1

## THE ISLAMIC STATE OF IRAQ AND THE LEVANT

2. On October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq, then known as Jam 'at al Tawhid wa'al-Jahid, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224.

3. On May 15, 2014, the Secretary of State amended the designation of al-Qaeda in Iraq as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant as its primary name. The Secretary also added the following aliases to the ISIL listing: The Islamic State of Iraq and al-Sham; the Islamic State of Iraq and Syria; ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham; Daesh, Dawla al Islamiya; and Al-Furquan Establishment for Media Production. To date, AQI, aka ISIS, aka ISIL, remains a designated foreign terrorist organization.

4. At all relevant times, the defendant knew that ISIL was a designated terrorist organization, and that it was a violation of United States law to provide support and resources to ISIL.

## THE DEFENDANT'S USE OF @AmreekiWitness IN FURTHERANCE OF HIS CONSPIRACY TO SUPPORT ISIL

5. On or about June 26, 2014, the defendant started the Twitter account: @AmreekiWitness, which boasted over 4,000 followers. The defendant used the account as a pro-ISIL platform during the course of over 7,000 'tweets.' Specifically, the defendant used this account to conduct twitter-based conversations regarding ways to develop financial support for ISIL using on-line currency, such as Bitcoin, and ways to establish a secure donation system or

2

fund for ISIL.

6. The following are examples of the defendant's use of Twitter in furtherance of his conspiracy to provide material support to ISIL:

   a. On or about July 7, 2014, using the @AmreekiWitness account, the defendant tweeted a link to an article he authored entitled "Bitcoin wa' Sadaqat al-Jihad" (Bitcoin and the Charity of Jihad). The link transferred the user to the defendant's blog, where the article was posted. The article discussed how to use bitcoins and how jihadists could utilize this currency to fund their efforts. The article explained what bitcoins were, how the bitcoin system worked and suggested using Dark Wallet, a new bitcoin wallet, which keeps the user of bitcoins anonymous. The article included statements on how to set up an anonymous donations system to send money, using bitcoin, to the mujahedeen.

   b. On approximately August 1, 2014, the defendant showed support for ISIL and his desire to help garner financial support for those wanting to commit jihad. Through @AmreekiWitness the defendant discussed methods to provide financial support for those wanting to commit jihad and for those individuals trying to travel overseas.

   c. On approximately August 19, 2014, the defendant showed support for ISIL and desire to support ISIL. The defendant tweeted that the khilafah needed an official website "ASAP," and that ISIL could not continue to release media "in the wild" or use "JustPaste." Through various tweets, the defendant provided information on how to prevent the website from being taken down, by adding security and defenses, and he solicited others via Twitter to assist on the development of the website.

7. The defendant also operated an AmreekiWitness page on the website ask.fm. The

3

defendant used these accounts extensively as a platform to proselytize his radical Islamic ideology, justify and defend ISIL's violent practices, and to provide advice on topics such as jihadists travel to fight with ISIL, online security measures, and about how to use Bitcoin to finance themselves without creating evidence of crime, among other matters.

8. The defendant also created the pro-ISIL blog entitled, "Al-Khilafah Aridat." On this blog, the defendant authored a series of highly-technical articles targeted at aspiring jihadists and ISIL supporters detailing the use of security measures in online communications to include use of encryption and anonymity software, tools and techniques, as well as the use of the virtual currency Bitcoin as a means to anonymously fund ISIL.

THE DEFENDANT'S FACILITATION OF RN'S TRAVEL TO SYRIA

9. RN, a co-conspirator, is an 18-year-old resident of Prince William County, Virginia.

10. Beginning in or around September 2014, the defendant began an effort to convert RN to a radical form of Islam.

11. In or about late November or early December 2014, the defendant put RN in touch with an ISIL supporter located outside of the United States via Surespot in order to facilitate RN's travel to Syria to join and fight with ISIL.

12. The defendant arranged for this ISIL supporter located overseas to send RN a package containing a phone for RN's use during his travel to Syria, an encrypted thumb drive, and a letter.

13. On or about January 7, 2015, FBI agents took possession of a package addressed to the defendant that contained an un-activated smart phone with international capability, a USB thumb drive, and a hand written letter containing both Arabic and English writing.

4

14. RN purchased airline tickets from Dulles International Airport to Athens, Greece, with a layover in Istanbul, which was RN's intended final destination. Once in Istanbul, RN was to meet up with a number of additional ISIL supporters, travel to Gaziantep, and then the border town of Urfa to meet an ISIL contact and cross into Syria.

15. On or about January 14, 2015, the defendant and another co-conspirator drove RN to Washington Dulles International Airport. During the trip, the other co-conspirator drove, and the defendant provided instruction to RN on where to go once he arrived in Turkey in order to meet up with other ISIL supporters traveling to Syria to join ISIL.

16. RN was last seen by his family on January 14, 2015, when he claimed to have departed with an unknown friend for a camping trip.

17. According to U.S. Customs and Border Protection records, on January 14, 2015, RN departed on Turkish Airlines Flight 8 from Dulles International Airport to Istanbul, Turkey and arrived in Istanbul on January 15, 2015. RN had onward travel booked to Athens, Greece aboard Turkish Airlines Flight 1843, but he did not board the aircraft.

18. On January 16, 2015, an overseas ISIL supporter communicated to the defendant via Surespot that the group of ISIL supporters, including RN, had successfully crossed over into Syria.

19. After RN's departure, the defendant and another co-conspirator delivered to RN's family in Prince William County, Virginia a letter from RN addressed to his family and a USB thumbdrive. The letter and contents of the thumbdrive indicated that RN did not plan to see his family again.

## CONCLUSION

20. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason.

21. This Statement of Facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and others' involvement in the charges set forth in the plea agreement.

Dana J. Boente
United States Attorney

By: *[signature]*
Michael P. Ben'Ary
Assistant United States Attorney
Caroline H. Friedman
Special Assistant United States Attorney

## Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Ali Shukri Amin
Defendant

## Defense Counsel's Signature

I am the attorney for the defendant, Ali Shukri Amin. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is informed and voluntary.

_____
Joseph Flood, Esq.
John Zwerling, Esq.
Cary Citronberg, Esq.
Counsel for the Defendant