IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.  1:15-cr-164 |
| | ) | |
| ALI AMIN | ) | |
| | ) | |
| Defendant. | ) | |

### ALI AMIN'S POSITION ON SUPERVISED RELEASE VIOLATION

Mr. Amin does not dispute the basic facts alleged in the Petition.[1]

Nevertheless, he disputes that he violated the conditions of his supervised release

for the following reasons.

- The requirements on computer monitoring, extremist/terroristic materials, and communication with known extremist (the "requested special conditions") are additional special conditions that were not properly promulgated because they were not written or pronounced orally, and Mr. Amin did not have counsel. Therefore, they never became conditions of release and Mr. Amin cannot be accused of violating them.[2]

- Even if the Court had properly promulgated the requested special conditions, the requested special conditions themselves are an improper grant of judicial authority to the probation officer and are therefore void.

---

[1] With respect to standard condition number 9, Mr. Amin concedes that he was in the presence of John Walker Lindh, but does not concede knowledge of his status as a convicted felon. He also does not concede the knowledge or intent alleged with respect to the Linux operating system, only that he used Linux. To the extent it is relevant, Mr. Amin disputes any characterizations alleged in the petition such as what constitutes "extremism."

[2] Mr. Amin understands that the government does not intend to proceed with any violation tied to conditions on "extremism." Nevertheless, for preservation, clarity of the record, and because the Court has not yet ruled on these matters, Mr. Amin has included his arguments with respect to those allegations in the petition.

- Even if the Probation Officer *could* lawfully command Mr. Ali to abide by these conditions, they are impermissibly vague, a fact which even the government acknowledged in its initial filing on the modification. The condition on computer monitoring is impermissibly broad, untethered to any particular conduct or rational.

- Finally, with respect to the allegation that Mr. Amin violated condition 9 by being in the presence of John Walker Lindh, the government cannot rely on any of Mr. Amin's statements at the modification hearing or related procedures as evidence because they were obtained in violation of his right to counsel. In other words, had Mr. Amin been appointed counsel as he requested when the government sought a modification of his conditions and as he was entitled, Mr. Amin would have had counsel to make arguments on his behalf instead of having to resort to his own statements, which the government now uses to establish that Mr. Amin knew Mr. Lindh was a convicted felon.

Accordingly, Mr. Amin cannot be found in violation of the conditions of his supervision based on the facts set forth in the January 9, 2023 Petition on Supervised Release. *See Petition on Supervised Release*, ECF No. 43 (Jan 9, 2023).

Alternatively, should the government find Mr. Amin in violation of conditions of supervision, he asks that the Court consider:

- the lengthy delay between the conduct underlying the allegations and the government's pursuit of a violation

- the positive efforts Mr. Amin has taken in the last 2.5 years

- comparable sentences of others

- the flaws in the guidelines

and sentence him to a period of incarceration no longer than 60 days.

Finally, Mr. Amin request that the Court modify the length of his life-time term of supervision as it is an extreme and unusual remedy.

## ARGUMENT

**I.    The requirements on computer monitoring, extremist/terroristic materials, and communication with known extremist are additional special conditions that were not properly promulgated because they were not written or pronounced orally, and Mr. Amin did not have counsel. Therefore, they never became conditions and Mr. Amin cannot be accused of violating them.**

Approximately two-and-a-half years ago, the government, prompted by the probation office, came before this Court to request that additional special conditions of supervision be added to Mr. Amin's supervision; namely that he be prohibited from accessing any material that reflects "extremist or terroristic views" or is "deemed to be inappropriate by the U.S. Probation Office" as well as being prohibited from associating with "any known Extremist or anyone suspected in any known Extremist activity," and that he be subject to unfettered *computer* monitoring as opposed to the original special condition which required only *internet* monitoring. *See Amin Judgment in a criminal case* ECF No, 20 at 4 (Aug. 28, 2015); *Gov't Mot to Modify Conditions of Release*, ECF No. 41 at 4 (July 17, 2020).

At the hearing, the Court suggested that these conditions already fell within the purview of the conditions previously imposed at the time of Mr. Amin's sentence (to follow instructions of the probation officer and internet monitoring) and stopped short of imposing them as new special conditions of Mr. Amin's supervision. *See Transcript of Proceedings*, Def.'s Ex. 2. However, these requested special conditions did not fall within the purview of the original supervised release conditions, and they could not.

As an initial matter, if these additional requirements could fall under the standard condition to follow instructions of the probation office, neither the probation officer nor government would have needed a hearing to modify Mr. Amin's conditions of release. Thus, the government's own actions requesting a hearing belie the assertion that these additional requirements were not newly imposed special conditions of supervision.

Second, simply looking at the requested conditions, there can be no question that they constitute additional restrictions on Mr. Amin's liberty to which he was not previously subject. The original special condition on computer monitoring was limited to monitoring his *internet* activity and it did not contain any restriction on any websites he could visit. *See* ECF No. 20 at 4. The probation officer's requested modification sought to monitor all of Mr. Amin's *computer* use, not just internet, and prohibit him from accessing material that the probation officer deemed to be "extremist" or "inappropriate." *See* ECF No. 41 at 4. The requested modification also further restricted the individuals Mr. Amin was not to have contact with from only convicted felons (in the original conditions) to any person that the probation officer deemed to be an "extremist" in the requested conditions.

Thus, conditions on "extremism," unfettered computer monitoring, and on his contacts with others were additional special conditions that, if the Court sought to add, were required to be promulgated through the process prescribed in 18 USC §3583 and the relevant caselaw. Among other requirements, Title 18 of United States Code, §3583 mandates that a special condition of supervised release be in

writing. *See* 18 USC §3583(f). Relevant caselaw also dictates that they must be pronounced orally by the Court. *See United States v. Matthews*, 47 F.4th 851, 855 (D.C. Cir. 2022) ("as three other circuits have held, the district court … must orally pronounce [the conditions of release] at sentencing.")(citations omitted). Further, a defendant has a right to counsel under Federal Rule of Criminal Procedure 32.1(c)(1). ("Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation."); 18 U.S.C. § 3006A(a)(1)(E)("Representation shall be provided for any financially eligible person who… is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release.").

That the task of promulgating additional special conditions of supervision cannot be delegated to the probation officer is a well-established fact, and one which the government tacitly acknowledged by filing its motion for modification. *See United States v. Johnson*, 48 F.3d 806, 808 (4th Cir. 1995) (fixing conditions of supervision is a "core judicial function," which cannot be delegated to a probation officer); *United States v. Miller*, 341 Fed. App'x 931, 932-33 (4th Cir. 2009) ("Determination of whether a court has improperly delegated the judicial authority of sentencing is based on distinguishing between the delegation to a probation officer of 'a ministerial act or support service' and the 'ultimate responsibility' of imposing sentence . . . it is permissible to delegate to the probation officer [only] the

details of where and when [a] condition will be satisfied.") (internal citations and quotations omitted).

In this case, the requested additional conditions were not written in accordance with 18 USC §3583(f), they were not pronounced orally in accordance with relevant caselaw, and Mr. Amin was not provided counsel in accordance with Federal Rule of Criminal Procedure 32.1(c)(1) and 18 U.S.C. § 3006A(a)(1)(E) despite requesting counsel more than once. *See* Def.'s Ex 2, *Tr. Status Hearing* at 3, ("But I feel that in order for me to properly articulate my side, it would be probably best for me to have some kind of counsel of some sort because I'm not an expert in the law. So I do have a motion that I prepared to request counsel, if I could submit that to you."); at 5 ("I am not sure as to whether or not those terms are necessarily constitutional, and this is why I requested, or which I have made the request to you to have some kind of representation."). Therefore, because they were not properly promulgated, the requested conditions never became conditions of Mr. Amin's supervised release and he cannot be accused of violating them.

This same principle is true for the government's allegation that Mr. Amin violated standard condition number 3 (following the instructions of the probation officer) by using an "unmonitored device" incompatible with RemoteCOM, the computer monitoring software. This is because Mr. Amin's conditions did not require (and as such did not allow the probation officer to instruct) that Mr. Amin submit to unfettered computer monitoring, which is precisely the nature of the RemoteCOM software. Therefore, by instructing Mr. Amin to submit to monitoring

of every facet of his computer by the RemotCOM software the probation officer acted outside the scope of the original conditions of supervision. A new special condition was required for the probation office to give such an instruction, indeed that additional special condition was sought, but as discussed above, that requested special condition was never actually promulgated. Therefore, a probation officer's instruction to follow it, expanding the restrictions under which Mr. Amin must abide, is unauthorized and void.

II.   **Even if the Court had properly promulgated the requested special conditions, the requested special conditions themselves are an improper grant of judicial authority to the probation officer and are therefore void.**

Not only is the Court prohibited from delegating the enactment of the requested conditions to the Probation Officer, the conditions themselves – even if they had been properly added by the Court – constitute an improper delegation of Judicial authority. "[C]ourts may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *Miller*, 77 F.3d at 77. For example, "while limiting a defendant from operating certain businesses may be appropriate depending on the circumstances, delegating to the probation officer the authority to decide what, if any, types of businesses are proper is a violation of Article III." *United States v. Shiraz*, 784 F. App'x 141, 143 (4th Cir. 2019); *see also United States v. Voelker*, 489 F.3d 139, 154-55 (3d Cir. 2007) (finding condition prohibiting a defendant from associating with minors without the prior approval of the probation officer constituted an "unbridled delegation of authority"); *United States v. Wagner*, 872

F.3d 535, 542-43 (7th Cir. 2017) (holding condition that permitted treatment provider to determine whether to restrict defendant's access to adult pornography was impermissible delegation); *United States v. Barber*, 865 F.3d 837, 840 (5th Cir. 2017) (vacating condition with language restricting "as deemed necessary and approved by the probation officer[,]" because it creates ambiguity as to whether the district court impermissibly delegated authority).

In this case, the conditions on "extremism" prohibit material that reflects "extremist or terroristic views" or is "deemed to be inappropriate by the U.S. Probation Office" as well as contact with "any known Extremist or anyone suspected in any known Extremist activity." *See Pet. on Sup. Release* at 2.

This leaves the Probation Officer to decide what material or people are "extremist." Certainly in today's time what constitutes "extremism" is an ever-changing debate. Allowing the Probation Officer to determine what is "extremism" improperly delegates judicial authority to Probation Officer. Perhaps even more problematic is the delegation to the Probation Officer the authority to violate Mr. Amin for any materials he "deems inappropriate." This is not even a matter of interpretation; it is straight delegation of judicial authority and an amorphous requirement at that.

The requested condition on computer monitoring includes the language: "Your cooperation shall include, *but not be limited to*…." *See* ECF No. 43 at 2 (emphasis added). Failing to place any limits on what the probation officer may require Mr. Amin to do in order to be deemed "cooperative" with the computer

monitoring is yet again an improper delegation of judicial authority. It is the Court, not the probation officer, who must place the mandates and the parameters on Mr. Amin's liberty.

### III. Even if the Probation Officer could lawfully command Mr. Amin to abide by these conditions they are impermissibly vague. The condition on computer monitoring is impermissibly broad, untethered to any particular conduct or rational.

"The void for vagueness doctrine is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments." *Manning v. Caldwell*, 930 F.3d 264, 272 (4th Cir. 2019). "It is principally concerned with providing individuals with adequate notice of what conduct they cannot engage in and with delineating clear limits on the enforcement power of the state." *United States v. Comer*, 5 F.4th 535, 541 (4th Cir. 2021) (citing *United States v. Van Donk*, 961 F.3d 314, 324 (4th Cir. 2020)). Thus, "[a] condition of supervised release is unconstitutionally vague if it doesn't give a probationer 'fair notice of the [punished conduct]' or is 'so standardless that it invites arbitrary enforcement.'" *Id.* (citations omitted). For example, a condition prohibiting a father from contacting his son except "for normal familial relations" was vacated as unduly vague. *See United States v. Hall*, 912 F.3d 1224, 1226 (9th Cir. 2019) (per curiam).

In this case, the government itself acknowledged there may be a vagueness issue with the proposed condition on "extremism." The government wrote in its motion to modify the conditions, "To avoid any claim of undue vagueness, the government hereby proposes amending this last proposed special condition to read: No Communication with Known Violent Extremist: You shall have no contact with

any individual you have reason to believe supports the use of illegal violence to coerce or intimidate people or governments." *See* ECF No. 41 at 4. Nevertheless, the probation officer did not amend the condition, leaving it, as the government put it, "unduly vague." *Id.*

Both conditions regarding "extremism" do not put a probationer on "fair notice of the [punished conduct]" and are "so standardless that [they] invite[] arbitrary enforcement.'" *Van Donk*, 961 F.3d at 323-24. As discussed *supra* §II, "extremism" can mean many different things to different people. The conditions provide no indication as to what constitutes "extremist" or "terroristic" and certainly no notice as to what will be "deemed to be inappropriate by the U.S. Probation Office." *See Pet. on Sup. Release* at 2.[3] Similarly, the computer monitoring restriction, which states "Your cooperation shall include, *but not be limited to….*," *see id.* (emphasis added), fails to define any meaningful parameters on what Mr. Amin must do to be deemed "cooperative" with computer monitoring. Thus, it fails give him "fair notice of the [punished conduct]." *Van Donk*, 961 F.3d at 323-24.

Additionally, the condition on computer monitoring is impermissibly broad, untethered to any particular conduct or rational. Special conditions of supervised release must be: "(1) 'reasonably related' to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) 'no greater [a]

---

[3] These conditions on "extremism" also run afoul of Mr. Amin's First Amendment rights and are therefore void. *See infra* §B.

deprivation of liberty than is reasonably necessary' to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission." *United States v. Ellis*, 984 F.3d 1092, 1098 (4th Cir. 2021) (citing 18 U.S.C. § 3583(d); *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020)). "The same is true when district courts alter conditions of supervised release." *United States v. Holena*, 906 F.3d 288, 291 (3d Cir. 2018). Special conditions that fail to comply with § 3583(d) are grounds for vacating the conditions. *See id* (citing *United States v. Worley*, 685 F.3d 404, 407-09 & n.1 (4th Cir. 2012)).

As the Fourth Circuit explained in *United States v. Shiraz*, 784 F. App'x 141, 145 (4th Cir. 2019), the defendant's unfettered computer monitoring "is not tethered to any particular conduct and captures all computer activity regardless of any connection to a recidivism risk. [Defendant's] condition monitors 'any and all [of his] activity,' even activity without a connection to the internet. (quoting *United States v. Quinzon*, 643 F.3d 1266, 1271-74 (9th Cir. 2011). Therefore, the "absence of any limitations violates the requirement that the computer-usage conditions avoid restricting [defendant's] liberty more than reasonably necessary, especially given the district court's lack of specific reasoning or analysis." *Id.* (citing *United States v. West*, 829 F.3d 1013, 1021 (8th Cir. 2016) (vacating overbroad condition that prohibited creating any website, because it failed to tailor the restriction to fit the defendant's crime for aiding and abetting tax evasion)).

The Fourth Circuit ruled that "[b]ecause the condition involves a greater restriction of liberty than is reasonably required by the district court's stated

concerns, we vacate this condition...."*Id*; *see also Ellis*, 984 F.3d at 1095 (the district court abused its discretion in imposing an outright ban on internet access and on possessing legal pornography or entering any location where it may be accessed because the conditions banning legal pornography and internet access could not be sustained as "reasonably related" under 18 U.S.C.S. § 3583(d)(1) and were overbroad under 18 U.S.C.S. § 3583(d)(2)); *United States v. Holena*, 906 F.3d 288, 293 (3d Cir. 2018).("[The defendant's] bans are not tailored to his conduct. They apply broadly to many internet and computer uses that have nothing to do with preying on children."); *United States v. Lifshitz*, 369 F.3d 173, 175 (2nd Cir. 2004)(vacating the computer monitoring condition, explaining, "a brief survey of methods revealed that the varieties of available products and techniques diverged vastly in their breadth, and in their implications for computer users' privacy. And, while the Fourth Amendment's reasonableness inquiry did not require employing the least intrusive means, it was not clear that the monitoring condition as structured ensured the required close and substantial relation. Finally, the efficacy of the condition was not clear."); *United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007)(Explaining that the computer monitoring condition "is overbroad in other respects. A computer monitoring condition in some form may be reasonable. However, to comply with the Fourth Amendment, it must be narrowly tailored -- producing no greater deprivation of liberty than is reasonably necessary.").

In this case, like in *Shiraz*, "The district court did not explain why such a broad restriction was necessary...to serve the relevant sentencing factors, nor did it

explain why the prior lesser restrictions were ineffective." *Shiraz*, 784 F. App'x t

144 (4th Cir. 2019). That is because there is no such explanation. Like in *Shiraz,*

*Ellis, Holena,* and the other noted cases, the pervasive computer monitoring to

which Mr. Amin is allegedly subject is inconsistent with the Sentencing

Commission's policy statements, it is not reasonably related to the 3553(a) factors,

and is a greater deprivation of liberty than is necessary to achieve the statutory

goals. Therefore, it is void and Mr. Amin cannot be found in violation.

**IV.  With respect to the allegation that Mr. Amin violated condition 9 by being in the presence of John Walker Lindh, the government cannot rely on any of Mr. Amin's statements at the modification hearing or related procedures as evidence because they were obtained in violation of his right to counsel under the Rules and Constitution.**

The Fifth Amendment provides, among other things, that no one "shall be

compelled in any criminal case to be a witness against himself." U.S. Const. amend.

V. Had Mr. Amin been appointed counsel when the government sought a

modification of his conditions as he was entitled under Federal Rule of Criminal

Procedure 32.1(c)(1) and under the Fifth Amendment, Mr. Amin would have had

counsel to make arguments on his behalf instead of having to resort to his own

statements, which the government now uses to establish that Mr. Amin knew Mr.

Lindh was a convicted felon.[4] Mr. Amin made an "unambiguous request," and "articulate[d] his desire to have counsel present sufficiently clearly" *Davis v. United States*, 512 U.S. 452, 459 (1994). *See* Def.'s Ex. 2 at 3, 5. Therefore, any statements made after that time cannot be used against him at a violation hearing.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Alternatively, should the Court find Mr. Amin in violation of conditions of supervision by associating with John Walker Lindh three times and using the Linux operating system, he asks that the Court consider: the lengthy delay between the conduct underlying the allegations and the government's pursuit of a violation; the positive efforts Mr. Amin has made in the last 2.5 years; the comparable sentences of others; and the flaws in the sentencing guidelines. These considerations lead to the conclusion that a period of incarceration no longer than 60 days is sufficient but not greater than necessary to achieve the goals of sentencing.

A. *Length of delay between conduct and violation petition*

The government references the alleged conduct in the violation petition to portray Mr. Amin as dangerous young man who will harm society unless he is locked away for the maximum time possible. Yet, the government was aware of

---

[4] Although caselaw indicates this right to counsel is not rooted in the Sixth Amendment, (*see United States v. Drew*, 2 F. Supp. 2d 781, 783 n.2 (E.D. Va. 1998) (There is a statutory right to counsel at a revocation hearing…. However, this statutory right does not create a Sixth Amendment right to counsel….") for preservation purposes, Mr. Amin submits that denying him counsel *does* contravene the Sixth Amendment because "[t]he purpose of the Sixth Amendment counsel guarantee . . . is to protect the unaided layman at critical confrontations with his expert adversary, the government…." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

almost the entirety of this conduct 1-2 years before it chose to pursue a violation. Specifically, it was in August 2021 (approximately 1.5 years ago) when FBI saw Mr. Amin with John Walker Lindh. The FBI didn't view him as a danger who needed to be locked up then. In October 2021 (over one year ago) the FBI witnessed this conduct again, twice. The FBI didn't take any action that shows he was a danger who he needed to be locked up at that time either. The chat messages with "Person-1" in the United Kingdom occurred 1-2 years ago and in that chat 1 year ago Mr. Amin referenced the teachings of an individual and using Linux. The FBI didn't act as though he was such a danger that he needed to be locked up at that point either.[5] But now, in February 2023, about 1.5 years after any of this allegedly occurred, the government purports that Mr. Amin is such a danger that the maximum amount of incarceration provides the only answer.

### B.  Positive efforts of Mr. Amin over the last 2.5 years

The alleged violations contemplated in this case involve seeing someone three times approximately 1-1.5 years ago and having the Linux operating system installed on a computer. Mr. Amin has no criminal history other than the underlying offense, he is not accused of committing any other crimes, and he hasn't been accused of being violent – indeed he never has. *See United States v. Rakhmatov*, 21-151(L), 3-4 (2d Cir. Nov. 17, 2022)(citing U.S.S.G. § 5D1.1,

---

[5] The probation officer indicates that he was advised of this in September 2022, approximately 3-4 months before issuing the violation petition. *See* ECF No. 43 at 3-4.

Application Note 3, (advising that a district court "should give particular consideration to the defendant's criminal history" in imposing supervised release).

The notebook that the government references was copied years ago from an individual imprisoned with Mr. Amin. The fellow inmate's prior military experience interested Mr. Amin and wrote down some of the things they discussed. It certainly did not constitute a plan of any kind. Indeed, as described in more detail below, Mr. Amin has spent the last 2.5 years engaged in positive efforts.

Further, it would be a violation of the First Amendment's freedom of speech to punish Mr. Amin based on simply writing some unsavory sentiments in a notebook. *See Snyder v. Phelps*, 562 U.S. 443, 454 (2011)(explaining that the First Amendment Protects the right of protesters to hold placards reading "God Hates the USA/Thank God for 9/11," "America is Doomed," "Don't Pray for the USA," "Thank God for IEDs," "Fag Troops," "Semper Fi Fags," "God Hates Fags," "Maryland Taliban," "Fags Doom Nations," "Not Blessed Just Cursed," "Thank God for Dead Soldiers," "Pope in Hell," "Priests Rape Boys," "You're Going to Hell," and "God Hates You" outside the funeral of a fallen marine).[6]

Similarly, material and chats that the government considers "extremist" and requests that the Court consider under §3553(a) are also protected by the First Amendment. Such mere possession or simple expression cannot be used as a basis

---

[6] Mr. Ali's First Amendment rights are not eviscerated by his status as a supervisee. *Holena*, 906 F.3d at 294 (explaining that a district court must consider a defendant's First Amendment rights when fashioning conditions of release) *Ellis*, 984 F.3d at 1101 (same).

to justify a prison sentence for Mr. Amin. *See United States v. Stewart*, 686 F.3d 156, 169 (2d Cir. 2012)("a court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights. . . . A sentence based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid.")(citing *United States v. Lemon*, 723 F.2d 922, 937-38 (D.C. Cir. 1983); *see also Dawson v. Delaware*, 503 U.S. 159, 167 (1992)("Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs.") (citing *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("The government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable")).

Instead, the Court should look to the positive efforts taken by Mr. Amin who entered prison when he was just 18 years old. Since his release, Mr. Amin has earned an Associates Degree from Northern Virginia Community College in General Studies and was one semester away from earning his Masters Degree in IT management. *See* Def.'s Exs. 3-4. While he studied for school he also earned multiple certificates which allowed him to obtain stable, fulfilling employment as a solutions architect. *See id.* He volunteered at his local Mosque where he enthusiastically, and on his own initiative, undertook tasks such as collecting trash, cleaning bathrooms, and organizing items. He also distributed food and organized events for the Mosque.

### C. Sentencing disparities

It is worth noting that John Walker Lindh was also on supervised release at that time he and Mr. Amin met, and in fact he and Mr. Amin reported to the same probation officer. Yet Mr. Lindh was never violated for associating with Mr. Amin.

The Court should also consider the case of Mohammed Hamzah Khan who was 19 years old when he was arrested with his young sister in tow at the airport trying to join ISIS. *See* Chuck Goudie and Barb Markoff, Christine Tressel and Ross Weidner, *Convicted ISIS recruit headed back to custody*, ABC7 (May 30, 2018). He served 3.5 years in prison and while on supervision he "failed to abide by court ordered restrictions and monitoring of electronic devices and online accounts." *Id.* He also had an ISIS flag at his house. When adjudicating his violation, the district judge credited his academic achievements and sentenced him to serve a 60-day sentence.

Similarly, Abdullahi Mohamud Yusuf was 18 years old when he left for the airport to become a fighter for ISIS. He spent 18 months in the local jail while his case was pending and was ultimately sentenced to time-served. *See* 0:15-cr-00046, *Def. Position on Sentencing*, ECF No. 96 (Nov. 3, 2016). After being released to a halfway house, Mr. Yusef watched a documentary on terrorism and failed a related polygraph examination. The district judge held a violation hearing and did not sentence Mr. Yusuf to any further incarceration, but instead continued him on supervision.

In the case of Ahmad Musa Jebril, the federal district court out of Detroit originally sentenced this proclaimed radical Islamic preacher to slightly under six years in prison after he was convicted on 42 counts of fraud. While on supervision, Mr. Jebril took a trip to lecture on his teachings without obtaining approval or making the proper disclosures to his probation officer. At his violation hearing, the court found Mr. Jebril's answers to the probation officer to be "evasive, incomplete, untruthful and show a lack of an intent to follow the terms of his supervised release." *See* 2:03-cr-80810, *Trans. of Violation Hearing*, ECF No. 168 at 28 (N.D.Ill. July 9, 2014). Nevertheless, he sentenced Mr. Jebril to electronic monitoring.

In *United States v. Comer*, the defendant was convicted of conspiring to engage in sex trafficking. She violated her supervision three times. The first time she violated she communicated with a convicted felon without authorization, used a computer without authorization, failed to comply with computer monitoring, and failed to comply with mental health treatment requirements. *See* 3 :18-cr-00230, ECF No. 15 (W.D.N.C. June 25, 2019). Some of these violations occurred in the course of the defendant brokering a drug deal via social media. *See id.* at ECF No. 22. The second time she violated she failed to comply with curfew, failed to comply with drug testing/treatment, used drugs or alcohol, communicated with a convicted felon, left the judicial district without permission, failed to report as directed, failed to comply with computer monitoring, and had unauthorized use of social media. *See* 3:18-cr-00230, ECF No. 39 (W.D.N.C. Aug. 30, 2021).  The third time she violated she failed to maintain proper employment, used drugs or alcohol, failed to

comply with location monitoring, and failed to report as instructed. After each of the three violation hearings she was sentenced to time-served. *See* 3:18-cr-00230, ECF No. 57 (W.D.N.C. Jan. 11, 2023).

In *United States v. Brummitt*, No. 04-cr-127-bbc-1, 2016 U.S. Dist. LEXIS 17409 (W.D. Wis. Feb. 12, 2016), the defendant was convicted of possessing CDs containing visual depictions of a minor engaged in sexually explicit conduct. He was sentenced to 162 months incarceration later reduced to 125 months. A little less than a year-and-a half into his supervision, the defendant violated several of his conditions of release in significant ways. He possessed "two unauthorized cell phones, four USB storage devices, several movies, and hundreds of CDs used for data storage. He also admitted using search engines on his monitored computer to search juvenile literature, anime and movies depicting young lost and troubled boys. He also admitted possessing CDs containing 'family pictures,' which included his victims posing in staged, seductive positions. Defendant admitted he staged and took the pictures for the purpose of sexual gratification. He also admitted on several occasions to his treatment provider and to his probation officer that he used unmonitored computers without permission from the probation office." *Id.* The defendant also "admitted talking to persons under the age of 18 along a bike path on several occasions without permission from the probation officer." *Id.* Further, the court found that the defendant was "resistant to treatment and has not complied with the sex offender counseling program requirements." Finally, the defendant associated with convicted felons by "sending books and other magazine clippings to

several inmates without permission from the probation officer." *Id.* The Defendant had a criminal history category of IV and with guidelines of 8 to 14 months imprisonment. Despite all of this, the court did not impose an additional incarceration for this defendant. *See id.*

### D. The flaws in the sentencing guidelines

The sentencing guidelines in this case should be 3-9 months for a grade C violation with zero criminal history. The terrorism enhancement, §3A1.4, that Mr. Amin received for his underlying offense artificially increased his criminal history category to VI and results in guidelines of 8-14 months for no empirical basis. This artificial inflation is "contrary to the theory behind the guidelines: that the offense level will reflect the seriousness of the offense, increasing incrementally based on specific aggravating facts, and the criminal history category will reflect the risk to the public, based on the defendant's prior record….Terrorism cases are undoubtedly serious, but automatically increasing a defendant's criminal history to reflect the seriousness of the charged offense seems misguided." *United States v. Dais*, 482 F. Supp. 3d 800, 803 (E.D. Wis. 2020)(internal citations omitted).

As the court explained in *United States v. Alhaggagi*, 372 F. Supp. 3d 1005, 1013 (N.D. Cal. 2019)(rev'd on other grounds), the *offense level* reflects the seriousness of the charged conduct. "A defendant's *criminal history category* reflects something different." *Id.* (citing *Martinez*, 931 F.2d at 852 n.1 ("the distinction between the calculation of the offense level and the calculation of the criminal history category is important insofar as 'each calculation concerns a conceptually

separate notion related to sentencing.'") (quoting *United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir. 1990)(emphasis in original). A defendant's criminal history score "evaluates the need to increase [the offender's] sentence incrementally to deter him from further criminal activity." *Id.* (citing *United States v. Scroggins*, 880 F.2d 1204, 1210 (11th Cir. 1989).

Based on this stated purpose, the *Alhaggagi* court opined, "If terrorism sentences are too low, the Sentencing Commission can recommend increasing the offense level for those crimes. But automatically increasing a defendant's criminal history to reflect the seriousness of the charged offense is inappropriate, as it does not reflect—unlike every other offense—the seriousness of the defendant's previous criminal convictions." 372 F. Supp. at 1014.

As the court in *Alhaggagi* explained, "The terrorism enhancement treats all terrorism defendants as if they are career criminals." *Id.* at 1016 (citing U.S.S.G. § 3A1.4(b); James P. McLoughlin Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 Law & Ineq. 51, 57 (2010) ("The shift to Criminal History Category VI ensures that a defendant will be sentenced as if he or she were a career criminal, with no empirical evidence that this is true or fair. . . .")).

"Absent the enhancement, he would have a criminal history category of I. *Id.* (citations omitted). Automatically assigning him a criminal history of VI would be illogical and unjust." However, as *Alhaggagi* states, "Fortunately, the guidelines

provide that '[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.'" *Id.* (citing U.S.S.G. § 4A1.3(b)(1)).

Certainly, increasing Mr. Amin from a Criminal History Category I to a Category VI based, not on his criminal history, but on the seriousness of his offense – which is supposed to be captured in an offense level calculation – substantially over-represents his criminal history which is zero. As such, this Court should find that the Guidelines should more appropriately be calculated at 3-9 months to reflect Mr. Amin's actual criminal history score of zero points.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Finally, Mr. Amin respectfully requests that the court modify the length of his life-time supervision. "A lifetime of supervised release is an extreme and unusual remedy," and "cases in which life terms of supervised release have been affirmed have typically involved child pornography or violent crimes." *United States v. Rakhmatov*, 21-151(L), 3 (2d Cir. Nov. 17, 2022)(citing *United States v. Brooks*, 889 F.3d 95, 101, 103 (2d Cir. 2018) (per curiam)." It is "unusually harsh," and unsupported by the underlying offense (or even alleged violations) in this case. *See id.* (citing *United States v. Jenkins*, 854 F.3d 181, 194 (2d Cir. 2017) (vacating a 25-year term of supervised release where "the district court offered no explanation that might justify imposing what amounts to a lifetime of the most intense post-release supervision"); *see also United States v. Fraga*, 704 F.3d 432, 442 (5th Cir. 2013)

("the imposition of a lifetime of supervised release affects substantial rights. And where a judge admits to the automatic imposition of a sentence, without regard for the specific facts and circumstances of the case or the range provided for in the statute, then it seriously affects the fairness, integrity, and public reputation of judicial proceedings.")(citing *United States v. Alvarado*, 691 F.3d 592 (5th Cir. 2012)).

## CONCLUSION

For all of the forgoing reasons, Mr. Amin should not be found in violation of his supervision. In the event that the Court finds him in violation, a sentence of no more than 60 days is sufficient but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted
ALI AMIN
By Counsel
CARMICHAEL ELLIS & BROCK, PLLC
_____/s/_____
Jessica N. Carmichael, Esq.
Virginia Bar No. 78339
Counsel for Defendant
108 N. Alfred Street, First Floor
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February, 2023 I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.


_____/s/_____
Jessica N. Carmichael